Madam Clerk, please call Third Case. 115-2576, Con-Way Freight, Inc. v. Robert Archibald. Does that thing go down? Doesn't that thing go down? Good morning, Your Honor. Good morning. May I please record Counsel Raymond Berg, Mark Russell, on behalf of the appalled respondent employer. Your Honors, this is an issue that stems from the interpretation and application of Section 8.1B of the Act. I would submit to you that the statute should not be interpreted in a manner that the impairment rating has no impact, that the impairment rating is simply paid lip service to, or simply lost and shuffled. That is not consistent with the language of the Act. That was not the intention of the amendment. That was not the intention of the legislature and the drafters of this amendment. I just want to ask a question to clarify something. Is it your position that the impairment rating be the primary factor to be considered, or what status are you asking we attribute to the impairment rating? Yes, I think the goal of this amendment obviously was to get away from the commission awarding PPD in the manner they did prior to 2011. Prior to 2011, essentially we had the commission rendering PPD awards based on their own conclusions as to what was an appropriate percentage or number to allocate to certain diagnoses. Prior to 2011, it was the commission's conclusions that 2 percent of a man to 3 or 4 percent of a man was an appropriate percentage disability award for, say, a back strain case. 20 percent to 25 percent of a man as a whole was an appropriate disability percentage award for an operated back case. The commission came up with their own numbers, which employers frankly felt were arbitrarily work evidence-based, work medical and scientific based on a percentage deviation, loss, perhaps a dead body part. And frankly were frustrated, felt it was inconsistent and unfair compared to the way it used to be done in other states, and wanted change. In 2011, for the first time, we had utilization of impairment ratings in Illinois. For the first time in 100 years, employers thought we are going to see something different. Now this is a real meaningful change in the United States. Let me ask you a question. How is the relationship between these doctors that is giving impairment ratings any different than the relationship of IME doctors? There is no difference. Let me tell you that they are doing the check. And we don't have to leave or vacate. We just have to be patient and let it all go away here. So we'll just suspend argument until this is over. What I'm suggesting to you is... I think we better wait for it. I'm trying to figure out when he's going to stop. Well... Do we need to follow this? No. No. No. It's checked with the... I get to my question. Yes. Claimants hire IME doctors that give them the causation opinions that they want. Defendants or respondents hire IME doctors that give them the causation opinions they want. Claimants are going to hire doctors to prepare reports that inflate the permanent partial disability. And defendants or respondents are going to hire doctors that come in at the low end. It's no different than the IMEs. Nothing has been solved here. And in this particular case, the legislature gave themselves the way out when they put in the provision that says no single illuminated factor shall be the sole determinant of disability. So, what do we got? You know, we've got... Doctor prepares a report and low ends the PPD and the commission jacks it up. Well, let me address both of your concerns together because I never actually got to answering your question. I intended to do so, but my position is, and I believe this is consistent with the language of the Act and the intention of the drafters and the reason that impairment ratings are on percentages. And that is that the impairment rating is to be the primary factor in determining permanent partial disability in Illinois. I think that's consistent and implicit in the language of Section 8.1B. I think it's consistent with the fact that impairment ratings are based on percentages. And it's absolutely consistent with the intention of the drafters when we look at the legislative history. Well, first of all, let's kind of go back to some basic principles. Why are we looking at legislative history unless it's found to be ambiguous with clear, plain, ordinary meaning of the statute? For direction in the event... You don't need direction. There is ambiguity. Where is the ambiguity? There's a list of factors that have to be considered. Am I correct in the statute? I mean, I'm trying to find it here, but... Yeah. It's in 1BB. I think the ambiguity and the uncertainty comes at, is the impairment rating the primary factor that is utilized in determining... Well, I'm back to that question. Where does it say it's the primary factor? It's one of five listed factors. That's all it is, one of five. And then it's followed up by the statement that says no single numerator factor shall be the sole determinant of disability. So where do you come up with the idea that implicit in the statute is that the impairment rating should be the primary factor? If the legislature wanted it to be the primary factor, they could have said so. They didn't. I think it's implied based on Section 8.1BV5, which states that you take the impairment rating and look at your impairment rating and take the other factors in addition to the impairment rating and determine and explain in writing whether that rating moves either up or down based on these other factors added to the rating. So we start with the rating. I believe this is the way it's supposed to work. We start with the rating as our primary factor and do these other ingredients. In addition, that's our main number. That's the starting point. What section is that? You said that it says that. 8.1BB5. 8.1BB5. Okay. And it states in that section that we then weight and evaluate the other factors. So these other factors, I think it's implicit in that language, are of lesser importance. And those are the factors that we use to determine whether we inflate or we deflate this percentage number. Now, your argument has some intuitive appeal, but here's what you're overlooking is our recent decision in Continental Tire in which court here held the plain language, first of all, of Section 8.1B does not even require the claimant to submit a report. And we emphasize that 8.1B does not, I quote, specify the weight that the commission must give to the physician's report. So how, then, is your argument consistent with that direction? Well, it doesn't specify the weight that has to be given, so how could it be the primary factor, then? That's what Continental Tire says. Right. I will acknowledge that we are not a strict AMA state. We definitely are not a strict AMA state. That is something that was discussed when the Act was modified. But these AMA ratings are of primary importance based on legislative history. So if you do believe there's ambiguity here, which there is, I suppose, based on the language, as to whether or not the impairment rating is the primary factor, if you look at the legislative history, they said, we consider making Illinois a strict AMA state. We went, we talked with the employers, they list the employers in the legislative history, if you see what I cite in my brief, they list having negotiations with Caterpillar. In the legislative history, it stated, was Caterpillar on board with these changes? And the representative, during the discussion, the representative says, no, they aren't, because they wanted a strict AMA state. But, essentially, and I'm paraphrasing, we tried to get as close as we possibly could in being an AMA state. We came really, really close. We didn't quite go there, but we were really, really close. When you look at a decision like this, like this that was rendered here, is this really, really close to using that rating as a significant factor, as a primary factor in rendering a decision? Here's the problem, okay, in my simple mind. We don't have significant or primary in the clear, unambiguous language. You can say, okay, if I take that section and the one you cite, BB5, and say, those can't be read in harmony, they create ambiguity, that's the only way we can talk about what Caterpillar wanted or the petitioner's bar wanted or whatever, and get into legislative history. I mean, that's, those are the rules. And it seems to me we've got to find that there's ambiguity there to get into all of that rich legislative history. Well, I believe there is in terms of the act stating no single factor will be determined. And then we've got another section that says we take these other factors and use them in addition to this, what is obviously the main factor. Okay, just a second. You're talking about the last sentence in the statute, and what it says is, quote, in determining the level of disability, the relevance and weight of any factors used in addition to the level of impairment, as reported by the physician, must be explained in a written order. It doesn't say they're subordinate to the level of impairment by the physician. It doesn't say that that's a primary factor. It just says, the sentence says that it must be explained in a written order, you know. But that's the sentence you're referring to, right? Yeah. You're saying that's the sentence that makes the statute state that the level of impairment by a physician is the primary factor. Yes, sir. Okay. You know, the level of impairment coming from a report is a quantitative factor. It is a percentage. The other factors are amorphous concepts, age, how does that relate to. So the legislature said, if you want to use those other factors, tell us what weight you put on them. But nowhere in here does it say that this quantifiable number is somehow primary or you have to begin from that point of view and start subtracting or adding. It just doesn't do it. I think the language that Justice Stewart read is very simply there because these other factors are not quantitative factors. It doesn't say in here you give age 40% of the value. But your impairment report has a percentage in it, doesn't it? It is. Yeah. And we're dealing with a schedule of losses based on which will we need to use a percentage. And the problem I have with that approach, if we're not going to use it as the primary factor, and, yes, I'm keying in on this in addition language, and I believe that implies that it's supposed to be, but if we're not going to use it in that fashion, then what good is it? What good was the amendment? How did it change anything? Well, it says if there is a physician's report, it requires that the commission consider it. That was never in a statute before. I understand that. But if we're still going to end up with a set of arbitrary numbers that seem to bear little resemblance to the rating, we haven't made much of a change here. We haven't gained any traction or any real evidence-based, you know, medical and scientific evidence-based decision-making based on a percentage loss. What's the purpose of having it in the statute to consider these other factors if the commission is required to just take the impairment rating by the doctor, which is what you see in the argument? Well, I'm not saying we're a strict AMA state, but what I'm saying is I believe based on this language that particular rating is supposed to be a starting point, that these other factors may move one way or another, but I'm not seeing the commission approach it that way, and I'm not seeing the commission, just like they did in this case, on a regular basis explain how these other factors impact that number and move it, and that's what they need to be doing. They didn't do it in this case. You know, you remanded the previous case you had because they didn't do it in that case, and that seems to be a problem. That seems to be an area of the statute that they are not following consistently. I think we remanded cases because they didn't explain the weight they gave to these other factors or why, you know. How they equated them and how they evaluated them. But we didn't remand it because they didn't explain how it moved the impairment rating up or down. Right. Correct. I agree with that. And in my view, I think that's something that needs to be part of the explanation. Okay. So in closing, I'm requesting you do a couple of things. I am requesting that you find when the Commission failed to comply with Section 8.1b on two counts, that they failed to consider the impairment rating as the primary factor in addition to the other factors, and I'm requesting that you find when the Commission failed to explain in writing the relevance and weight of any of the factors used in addition to the impairment rating and how it inflates or deflates the rating. In this particular case, we have a bilateral hand injury, and the rating was 4% to the right and 0% to the left. And in the Commission's decision, they essentially found that the age was a neutral factor. They essentially acknowledged that the wages were a factor that supported less disability because he was earning more following the accident than he was prior to the accident. They found that the medical records likely supported disability. I don't know if I would say increased disability. Yet they inflated the rating more than seven times and awarded 30% on the right and inflated the left more than eight times and awarded 8% on the left side. So I am requesting that you do those things. Thank you. Okay. Thank you, counsel. You have time to reply. Response? Good morning, Your Honors. Counsel, may it please the Court. Mike Brandenburg on behalf of the Appellee's case, the IWCC, and the injured worker, Robert Armstrong. The Commission's award and the judgment of the circuit court should be affirmed in their entirety because there is no issue of law here, and the Commission's factual decision is not against the manifest weight of the evidence. And first, when I say there is no issue of law, there is no need to reinterpret this statute because this is not a case of first impression. As was mentioned, the Continental Tire case mentions twice that the weight to be given to the physician's impairment opinion is left at the discretion of the Commission. And I would also point out that that portion of the Continental Tire case was, again, reiterated in the Cornbell case. So we have mentioned three separate times here, and it goes along with the fact that it is the plain language of this statute, which simply states that there are five factors which the Commission must consider as present, and no one of these factors will be the sole determinative factor. And, yes, in addition to a written physician's impairment report, the Commission should also issue a written order explaining the relevance and weight of the other four factors, which it must consider. Where did this Commission explain the weight that it gave? I believe in the written order that was issued by the arbitrator and thereafter adopted in its entirety by the Commission, they do provide more than a bare-bones analysis simply listing facts, or the bare minimum. They do provide an explanation which shows that both the arbitrator and the Commission were drawing conclusions from the facts. But that's not the question I asked you. Where in this report did they explain the weight they gave to each factor? Other than the fact that says he has no diminishment of earning capacity, and he has a disability, the only thing they do is they've got some canned language here that says the determination of PPD is not simply a calculation, evaluation of all five factors, and making the evaluation consideration the given, therefore applying Section 8.1, considering the relevance and weight of these factors. Where did they explain the weight they gave to them? I think the weight and the conclusions of the arbitrator are explained in the prior paragraphs, before the paragraph you just mentioned, where they list the five factors and they list the facts accompanying these factors. And, for example, where the relevance is explained is, for example, rather than just listing the age of the petitioner, as was done in, let's say, for example, the Cornbell case, the arbitrator explains his conclusions on this age, and that we're dealing with a middle-aged man, we're not dealing with a younger individual or an older individual, and therefore the amount of treatment that he underwent for this injury, the impairment, those are going to affect a 46-year-old man differently than a 21-year-old man, differently than a 60-year-old man. I think when you just mentioned the last paragraph here where it's, I think the important part is where it says it is an evaluation of all five of these factors taken together. So, for another example, the arbitrator mentions that this petitioner went, yes, he returned to his full-duty job, which he had at the time of the accident, which he notes was a heavy-duty job. The job description was submitted as evidence in this case. Therefore, taking that heavy duties that this petitioner has to perform, he's going to be affected by this injury more than if he was just returning to a desk job. And that also plays in, again, with the age. These 46-year-olds going back to a heavier-duty job, with the injuries that he sustained, with the impairment rating, taking all those factors together, the judge is forming his conclusions based on the facts and arriving at the determination of the PPE or the permanency award. And I would also point out that at the time of hearing, this petitioner did testify that he was having residual symptoms in both of his feet. This is a case that was issued on the left and the right. And what factor does that fall under? That would be factor number five, where the judge is taking, excuse me, the arbitrator is taking the documented medical evidence that was submitted at the time of the hearing, which includes surgery, therapy. Okay. So, you know, if we were rationally and logically writing this, we'd say, okay, each factor, and whatever the record evidence would show should be identified under which category, correct? Because you've got to take into consideration, shall base your determination on those factors. So if there's evidence, you have to categorize these factors, right? If I were to do a flow chart of what an arbitrator in the commission, if I adopt them, should do, right? Your Honor, I believe you're absolutely right. Okay. But then I have to do more than that under BB5, don't I? I believe you're referring to the portion that says explain the weight and the relevance of these factors. Correct. Right. I believe in this case that the arbitrator has done a sufficient job. And I guess my question would be, where is the line that is sufficient explanation of the relevance and the weight of these factors? The judge, the arbitrator in this case has provided evidence of his logical conclusions based on these facts. But the statute doesn't say that the arbitrator or the commission must assign a specific percentage to each factor. It does not require the arbitrator. No, no, no, no. But there's got to be some language there that says this factor is of significance versus and or this factor is of significance. Because the opposing counsel says we've got an impairment rating based on whatever those standards are of what, 4% on one side, right? Yes. And what did they come up with, the commission? He said seven times. And then some on the other side of which there's no impairment. Supposedly under the level of impairment factor. Yes. Your Honor, in this case, the physician's impairment opinion was for 4% of the left. Excuse me, the right foot. Okay. And 0% on the left. Okay. Commission arrived at 30% on the right, 8% on the left. And how did they find that increase? Well, I would refer to that language at the end of the decision, which says that they took all these five factors in conjunction, including at each stage in the written order where they explained which evidence was considered, how it was considered, and they arrived at these numbers. I mean, actually, in this case, the arbitrator actually set out the statute, and then he went through each factor one at a time and said, you know, with regard to paragraph II of the section, he talks about that, and he says the arbitrator concludes that the petitioner's permanent partial disability may be larger than an individual who performs lighter work. So they explain how that relates. Then they give his age and say he concludes he may have disability for a longer period. I mean, the arbitrator does explain on each section and then gets to the end and says, considering what I've said about all five categories, this is my conclusion. So you're correct, Your Honor. I mean, he went through each section of the statute and explained what the arbitrator did, and the commission adopted that. You're absolutely right. And in their brief, the employer claims that there's no way that the commission could have arrived at the numbers using their analysis. Instead, the employer proposes, well, it could only have been at most 10 percent of the foot. Well, all that is doing is trying to substitute the employer's judgment for that of the commission, which is exactly what the manifest way of the evidence standard prohibits. And again, I would just point out that the statute does not lay out rules for the commission to follow. They have to give specific percentages or they have to rank the factors. And again, this goes back to that there is no sole determinative factor. They're not requiring the arbitrator or the commission to do a math problem in this case. I suppose the one portion of your opponent's argument that is somewhat compelling is if the intent was to allow this to continue to be just a subjective evaluation on the part of the commission with a requirement that they announce that they have looked at the report, then why ask them to give us a written explanation as to weight they place on it? What's the reason for that? I would agree that the statute as written requires the commission to take into consideration this written report from the physician at present. The commission must also explain the weight and relevance of all five factors in determining their permanency awards. And we know that since these 2011 amendments, the award values have gone down from the commission. Is that as a result of the legislation or is that as a result of who's appointing the commissioners these days? Be careful of being recorded. Well, is it the result of the nature of the cases that come before them and the nature of the injuries? I think it is the result of the arbitrators and the commission taking into consideration all five of these factors before issuing their conclusions of fact on the permanency values of these injuries. The conclusions which, as Justice Stewart pointed out, that the arbitrator and the commission make in these five factors in this case, they're not unreasonable, and more importantly, they're not against the manifest weight of the evidence. And remaining it back to the commission, for example, doesn't change that fact that it's not against the manifest weight of the evidence. Essentially, we're asking the commission to take these conclusions of fact that you've already made and take this written order where you have performed an explanation of the weight and relevance that you attributed to each factor and rewrite the same conclusions but with a little more explanation. It arrives at an inefficient result, and it goes to the issue of judicial economies. Why are we having this commission re-decide, re-litigate these issues again? And again, I would say, where is the line? Where is the sufficient explanation? If the commission's provided that explanation for each factor in this case, there's no requirement that they rank or give a percentage to each of these. And therefore, the findings of the fact made by the commission and the arbitrator in this case are not against the manifest weight of the evidence. So I would just briefly conclude by respectfully asking this Court to find that the judgment of the commission regarding the nature and extent of Mr. Armstrong's injury is not against the manifest weight of the evidence and to affirm the award and the judgment of the circuit court. Thank you very much. Thank you, counsel. Yes, sir. You have five minutes in reply. The commission in issuing this decision absolutely did not comply with Section 8.1 BB5. The statements that are made as to the other factors in addition to the impairment rating is a recitation advance. It's not an evaluation. Well, wait a minute. But that's not true. I'm reading from the arbitrator's report with regard to Section III. Petitioner's permanent partial disability may be larger than an individual who performs lighter work. With regards to No. 3, it says while he may have to live and work with a disability for a longer time than an older individual with the same injuries, he may just as likely recover from the injuries more quickly than the older worker. It turns around and says in 4, which I presume you really like, there is no evidence that the petitioner's further earning capacity is diminished as a result of the injury. This arbitrator did give reasons for why this one was important, the other one was not. Now, what more can you ask them to do? Give a percentage? I could ask them to do exactly what the statute says, weight them, determine the relevance. In other words, you want percentages. You want them to say, I think it goes up 5 percent because of this. I think it goes up 4 percent because of that. Or it goes 10 percent because of that. That's what you're asking for. I've got a revision of the statute. I want answers. I want explanation. I want them to follow the statute. I want to see something different. Well, what are you asking? If you were writing this opinion, what would you have us tell them they must say? I grew up in a strict household. We had a lot of rules. It was very frustrating when the response I would get from my mother was because I said so. That's what I feel like is happening in a lot of these decisions. That's what I feel like is happening. Sir, I would agree with you. Excuse me. I would agree with you 100 percent. If the arbitrator had not put in everything that says what is the nature and extent of the petitioner and only put in the concluding paragraph that says I've considered the evidence and in my determination I've considered the weight and this is what I'm given. I don't see how I went from 4 to 30 based on this explanation. And I do believe the commission should be required to determine the relevance of these factors with an explanation and weight them. I'm back to my same question. If you were writing this opinion, what would you have us tell them they should do? Assign percentages to the weight? That would be one way. That would be one way. Assign percentages so we know how important that particular factor was to your process. And we know in the future what criteria you're going by so we know how this is going to impact awards. I mean, I don't know what the parties thought they got out of these revisions, but it was pin the tail on the donkey before you had this revision. It's still pin the tail on the donkey. Because all they've got to do is say this is more important than the other thing was, so we're giving that more weight than we gave this, and we're coming up with this number. And it's not a quantifiable thing. It's not something that's subject to an objective standard. It's still going to be their subjective belief as to what all these factors added together and the weight that they accord them turns out to the percentage they give. I read the legislative history. What they thought they got out of it was something close to a strict mandate. Well, then they should have used, excuse me, then they should have used the word primary or they should have used substantial, and they didn't do it. And I don't know who was negotiating this, but maybe they didn't get what they thought they got. Thank you, counsel, both, for your fine arguments on this matter. It will be taken under advisement and a written disposition shall issue.